UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION AT LONDON**

DAVID WAYNE HINKLE,            )
                               )
    Plaintiff,                 ) Action No. 6:16-CV-000143-JMH
                               )
v.                             )
                               ) **MEMORANDUM OPINION AND ORDER**
NANCY A. BERRYHILL,            )
Acting Commissioner of         )
Social Security                )
                               )
    Defendant.                 )

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on the parties' cross-Motions for Summary Judgment (DE 15, 17, 19) on Plaintiff's appeal of the Acting Commissioner's denial of his application for disability insurance benefits.[1] The matter having been fully briefed by the parties is now ripe for this Court's review.

**I.**

In determining whether an individual is disabled, an Administrative Law Judge ("ALJ") uses a five step analysis:

1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520(1982)).

## II.

In April 2013, at the age of fifty-one, Plaintiff filed an application for Supplemental Security Income ("SSI"), alleging disability beginning July 1, 2008 (Tr. 197-206). Hinkle has an eleventh grade education, reads at a sixth grade level, and has no past relevant work. This claim was initially denied on June 25, 2013, and upon reconsideration on September 5, 2013. He requested a hearing, which was held and at which he testified on January 7, 2015, in Livonia, Michigan. Hinkle testified at the hearing, and

2

the ALJ ultimately determined that he had the severe impairments of obesity, degenerative disc disease of the lumbar spine, hypertension, and anxiety. After the hearing, the ALJ submitted interrogatories to vocational expert ("VE") Michael E. Rosko. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience with limitations the same as those ultimately determined by the ALJ to be those of Plaintiff (Tr. 284): "claimant has the residual functional capacity to perform light work . . . except the claimant requires a sit/stand option allowing a change in position every fifteen minutes; should never use ladder[,] scaffolds[,] or ropes; should avoid walking on uneven surfaces and should never use foot controls . . . [and is] limited to simple unskilled work without concentration on detail/precision task, multi-tasking, reading, computing, calculating or problem solving; work in a non-public setting with casual infrequent coworker contact and infrequent introduced routine work changes accommodating a sixth grade literacy level." The VE stated that such an individual could perform the unskilled light jobs of assembler, packager, and sorter (Tr. 285). After receiving the interrogatory responses, the ALJ proffered the evidence to Plaintiff's attorney for the opportunity to comment on the response, to submit additional questions to the vocational expert, and to request a supplemental hearing (Tr. 287-88). Plaintiff's attorney did not respond (Tr. 27). The Administrative

Law Judge ("ALJ") denied Plaintiff's claim in April 2015 (Tr. 24-46), and the Appeals Council denied Plaintiff's request for review (Tr. 1-6), making the ALJ's decision the final agency decision for purposes of judicial review. 20 C.F.R. §§ 416.1481, 422.210(a). This appeal followed. The relevant aspects of the record evidence are discussed in turn, below.

## III.

When reviewing a decision made by the ALJ, the Court may not "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). "The ALJ's findings are conclusive as long as they are supported by substantial evidence." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted). Substantial evidence "'means such relevant evidence as a reasonable mind might accept.'" *Foster*, 279 F.3d at 353 (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1991)).

## IV.

As an initial matter, Plaintiff has not cited to any evidence in the record nor has he otherwise supported his claim that he meets Listing 12.05, as he argues in his Motion for Summary Judgment. Plaintiff bears the burden of demonstrating that his impairments meet or equal a listed impairment. *Bowen v. Yuckert*,

4

482 U.S. 137, 146 n.5 (1987). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis omitted); *see also Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) (same).

Under the Acting Commissioner's regulations, Listing 12.05 is structured differently than the rest of the mental disorders listings. 20 C.F.R. pt. 404, subpt. P, app. 1, §12.00(A). Listing 12.05 contains an introductory paragraph, or a "diagnostic description," with criteria the claimant must meet in addition to meeting one of the "four severity prongs" for intellectual disability. *See Randall v. Astrue*, 570 F.3d 651, 659-60 (5th Cir. 2009); *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009); *Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007); *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006); *Foster*, 279 F.3d at 354. As the regulations clearly explain, "[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria [paragraphs A through D], we will find that your impairment meets the listing." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A) (emphasis added). The diagnostic description of Listing 12.05 requires a showing of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period [i.e., onset before age 22]." 20 C.F.R. pt. 404, subpt. P,

5

app. 1 §12.05. Once that is shown, "severity prong" C requires a showing of (1) a valid verbal, performance, or full scale IQ of 60 through 70; and (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §12.05C.

Here, the only IQ scores contained in the documentary evidence are from a consultative examination performed by Mary Allen-Genthner, M.S., in April 2010, in connection with an earlier application for benefits. On IQ testing, Plaintiff achieved a Verbal Comprehension score of 89, a Perceptual Reasoning score of 81, and a Full Scale IQ score of 80, placing him in the low average range of intellectual functioning (Tr. 322). Ms. Allen-Genthner assessed alcohol dependence, anxiety disorder, and history of poly-substance abuse but did not provide any diagnosis related to Plaintiff's intellectual functioning (Tr. 322-23). In fact, no medical source diagnosed Plaintiff with any disorder relating to intellectual functioning. Leigh A. Ford, Ph.D., an examining agency psychologist examined Plaintiff in June 2013, and estimated Plaintiff's intelligence to be in the average to low average range. She assessed pain disorder related to general medical condition and anxiety disorder (Tr. 483). That same month, Dan Vandivier, Ph.D., reviewed Plaintiff's records and evaluated his mental impairments of anxiety disorder and substance addiction disorders, but not intellectual disability (Tr. 106). Dr. Vandivier concluded

Plaintiff could carry out simple instructions/tasks in object focused, nonpublic work settings with casual, infrequent coworker contact and infrequent, gradually introduced work routine changes, accommodating a sixth grade literacy level (Tr. 109). Later that summer, state agency psychologist Lea Perritt, Ph.D., agreed with Dr. Vandivier's opinion (Tr. 123).

Not only did valid IQ testing reveal scores well above those required to meet Listing 12.05, there were also no evidence that Plaintiff had deficits in "[a]daptive functioning [which] includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007). A person has deficits in adaptive functioning when he has significant limitations in at least two of the following skill areas: communication, self care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. *See Diagnostic and Statistical Manual of Mental Disorders – Text Revision* (DSM-TR2000) at 41-42. While not considered in the evaluation as relevant past work, Hinkle reports that he worked for many years as a floor covering contractor, which is a skilled job (Tr. 240, 279, 283). He also worked as a semi-truck driver, which is a semi-skilled job and required him to have a commercial driver's license (Tr. 240, 283, 322). Plaintiff also completed truck-driving school (Tr. 226). He

7

maintained the ability to perform his own self-care tasks (Tr. 221, 257, 487), prepare meals and do housework (Tr. 64, 218, 258), and shop and handle money (Tr. 63, 216, 223). He also cared for his elderly father (Tr. 325). Plaintiff reported that before his back injury he "could do anything" (Tr. 221). He was able to complete the questionnaires for his disability claim himself (Tr. 223, 259). As the Acting Commissioner urges in her Motion for Summary Judgment, the evidence clearly supports a conclusion that Plaintiff was not disabled by deficits in adaptive functioning.

Plaintiff has failed to demonstrate on the evidence of record that he met all of the specified medical criteria of Listing 12.05, and the Acting Commissioner's decision will be affirmed in this regard. *See Zebley*, 493 U.S. at 530 (noting that it is the Plaintiff's burden to demonstrate that he meets all the Listings requirements).

## V.

The Court also rejects Plaintiff's argument that the "overwhelming weight of treating and examining physician opinions" prove that he is disabled. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). While medical opinions of treating doctors

are entitled to controlling weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence, 20 C.F.R. § 416.927(c)(2), none of Plaintiff's treating physicians provided any opinion regarding the nature and severity of Plaintiff's physical impairments or his functional limitations. Thus, there was no opinion that could be given controlling weight. *See Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (ALJ had no duty to give observations contained in treatment records controlling weight or provide good reasons for not doing so as they were not medical opinions under the regulations).

There are multiple impressions of Plaintiff's multilevel degenerative disc disease, lumbar disc herniation, diagnoses with back sprain and lumbar sprain, and general chronic back pain in his treatment records, but Plaintiff never draws the Court's attention to any limitations evidenced in those medical records. Nonetheless, in keeping with those, when examining physician, Robert C. Hoskins, M.D. examined Plaintiff in September 2012, and provided what the Acting Commissioner describes as a somewhat imprecise opinion, Dr. Hoskins stated that he expected "remarkable limitations standing, walking, lifting, and carrying for foot and back pain" but also stating that he identified no musculoskeletal dysfunctions that would "clearly exclude some ambulation, standing, sitting, handling, gross manipulations, or traveling."

9

Dr. Hoskins also stated that there were no limitations that "clearly excluded all light carrying, light lifting or some bending, squatting, crawling, climbing and balancing" (Tr. 364). The Court agrees that, while Dr. Hoskins did not quantify these limitations, he offered no opinion that Plaintiff had limitations that would preclude all work.

Later, state agency medical consultant Jack Reed, M.D., who reviewed Plaintiff's record, assessed limitations consistent with medium work (Tr. 125-26), although the ALJ gave this opinion only "some weight" because he thought the evidence revealed greater limitations than that. The ALJ also noted Plaintiff did not seek much treatment for his allegedly disabling physical and mental conditions and that what treatment he did receive was of a conservative nature (Tr. 38).
The ALJ considered these opinions and the treatment records in conjunction with normal or near normal examination findings, including normal strength, intact sensation, normal reflexes, and normal gait and station (Tr. 35, *see*, Tr.363, 425, 492, 496, 522).

The ALJ was obliged to resolve conflicts in the opinion evidence contained in the record and decided to accord greater weight to Dr. Hoskin's opinion than to Dr. Reed's opinion, a reasoned decision supported by substantial evidence of record. *See Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990). Because the ALJ's decision was consistent with the medical opinion in the

record and properly relied on the record to resolve the conflict in that evidence, there is no error in this regard.

**VI.**

Next, the Court considers Plaintiff's arguments about the ALJ's treatment of testimony and application of the so-called pain standard, which are essentially challenges to the ALJ's finding that his statements as to the intensity, persistence, and limiting effects of his symptoms (Pl.'s Br. at 14-16; *see also* Tr. 39). In this regard, the ALJ's analysis of Plaintiff's symptom complaints is entitled to particular deference from this Court. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying.").

An ALJ can base his decision that a claimant's symptoms are not as limiting as a claimant alleges on a lack of support in the medical records. *See* 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating and nontreating source or other persons about how your symptoms affect you.") (effective June 13, 2011 to Mar. 26, 2011; amended 82 CFR

5882, effective Mar. 27, 2017); Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.") (superseded by SSR 16-3p (effective Mar. 28, 2016)), 2016 WL 1237954 (Mar. 24, 2016)). A claimant's allegations are less believable if his allegations are not supported by the objective medical evidence or his medical treatment history. *Id*. at 6-8.

In this instance, no treating physician placed any restrictions on Plaintiff's activities or suggested he was disabled. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 596 (6th Cir. 2005) ("'a lack of physical restrictions [imposed by a doctor] constitutes substantial evidence for a finding of non-disability'") (quoting *Maher v. Sec'y of Health & Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989)) . Plaintiff consistently had normal or near normal examination findings, including normal strength, intact sensation, normal reflexes, and normal gait and station. (Tr. 363, 425, 492, 496, 522); *Curler v. Comm'r of Soc. Sec.*, 561 F.App'x 464, 475 (6th Cir. 2014) (testimony describing pain contrasted starkly with medical evidence showing no significant abnormalities in claimant's cervical spine). While Plaintiff testified that he experienced side effects from his medications (Tr. 59), Plaintiff never complained of this to any of his doctors which undermines the credibility of this testimony in

some regard. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (a claimant's testimony may be discounted if it is contradicted by the medical reports and other evidence in the record).

Further, the ALJ properly considered Plaintiff's admitted activities of daily living in finding his claims of disabling limitations not believable (Tr. 38). *See* 20 C.F.R. § 416.929(c)(3)(i) (stating an ALJ must consider a claimant's activities). Plaintiff reported that he managed his own self-care tasks (Tr. 221, 257, 487), managed his finances and shopped (Tr. 63, 216, 223), drove (Tr. 59, 223), went to the park and library (Tr. 216), prepared simple meals (Tr. 63), and burned trash (Tr. 218). The ALJ reasonably found that these activities were inconsistent with Plaintiff's claims of disabling symptoms (Tr. 38). *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) ("Buxton's own accounts of her activities and limitations were also conflicting. For instance, she shops for herself, does light cleaning, cooks for herself, drives herself places (including numerous doctors' visits), and exercises daily (thirty minutes of walking without post-exertional collapse), but cannot work.").

While Plaintiff's "excellent work history" (Pl.'s Br. at 14) may weigh in his favor, it does outweigh the rest of the record here. *See Hicks v. Colvin,* Civ. No. 12-147-GVFT, 2015 WL 778800 (E.D. Ky. Feb. 24, 2015) ("good work record by itself is not enough

13

to overcome the substantial evidence in the record" supporting the ALJ's credibility finding). Additionally, while it might be error to discount a claimant's claims about the severity of his pain on lack of objective evidence alone, *see Felisky v. Bowen*, 35 F.3d 1027, 1028 (6th Cir. 1994), as Plaintiff argues, that did not happen here. Rather, the ALJ properly relied upon the medical opinions, Plaintiff's inconsistent statements, and his course of treatment in concluding that Plaintiff's symptoms were not as severe as he alleged. This was a credibility determination in the most classic sense, and the Court concludes that the ALJ's analysis of Plaintiff's subjective complaints was supported by substantial evidence and will affirm the decision in this regard.

## VII.

Finally, the Court rejects Plaintiff's argument that the ALJ erred in relying on the VE's response to interrogatories in reaching a decision because that response was not provided under oath and because of the format of the interrogatories. SSR 96-9p provides that "[a]t the hearings and appeals levels, vocational experts (VEs) are vocational professionals who provide impartial expert opinion during the hearings and appeals process either by testifying or by providing written responses to interrogatories. A VE may be used before, during, or after a hearing." SSR 96-9P, 1996 WL 374185 at * 10 n. 8, and an ALJ may rely on responses to written interrogatories so long as the claimant receives due

process. *Coffin v. Sullivan*, 895 F.2d 1206, 1212 (8th Cir. 1990). In this instance, the ALJ gave Plaintiff ten days to consider the expert's responses, and committed to holding a supplemental hearing so Plaintiff could cross-examine the vocational expert. Plaintiff never responded to the offer. The Court concludes that these procedures comported with due process on these facts.

Accordingly, for all of the reasons set forth above, **IT IS ORDERED**:

1) that Plaintiff's Motion for Summary Judgment (DE 15) is **DENIED;** and

2) that Defendant's Motion for Summary Judgment (DE 19) is **GRANTED.**

This the 29th day of September, 2017.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge